## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SHIRLEY R. COYLE,

          Plaintiff,

v.

                                            Case No. 8:24-cv-1354-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

          Defendant.

_____

## **OPINION AND ORDER**[2]

## I.   Status

    Shirley R. Coyle ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of hearing loss in both ears, tinnitus, dizziness, chemical sensitivity allergy, post-traumatic stress disorder, and depression. Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"),

---

[1]    Frank Bisignano was recently confirmed as the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

filed August 5, 2024, at 85, 95, 226. Plaintiff protectively filed an application for DIB on October 7, 2020, alleging a disability onset date of June 16, 2020.[3] Tr. at 206-10. The application was denied initially, Tr. at 84, 85-93, 114-17, and upon reconsideration, Tr. at 94, 95-103, 124-27.[4]

On December 21, 2021, an Administrative Law Judge ("ALJ") held a hearing,[5] during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 59-83. On February 15, 2022, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 43-53.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her representative. See Tr. at 7-8 (Appeals Council exhibit list and order), 203-05 (request for review), 325-418 (brief and attachments). On November 18, 2022, the Appeals Council denied Plaintiff's request for review, Tr. at 4-6, thereby making the ALJ's Decision the final decision of the Commissioner.

---

[3]     Although actually completed on October 8, 2020, see Tr. at 206, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as October 7, 2020, see, e.g., Tr. at 85, 95.

[4]     Some of these documents are duplicated in the administrative transcript. Citations are to the first time a document appears.

[5]     The hearing was held "online" via videoconference with Plaintiff's consent. See Tr. at 61, 166-67, 168-69, 193.

Plaintiff appealed the final decision to this Court. <u>See</u> Compl. (Doc. No. 1), No. 8:22-cv-2940-CPT (M.D. Fla. Dec. 27, 2022).[6] On May 19, 2023, pursuant to an unopposed motion by Defendant, this Court entered an Order reversing and remanding the matter for further administrative proceedings. Tr. at 1204-05, 1208-10; <u>see</u> Tr. at 1206 (Judgment). On remand, the Appeals Council remanded the matter to an ALJ. Tr. at 1213-14.

On January 11, 2024, another ALJ held a hearing,[7] during which Plaintiff (represented by counsel), a VE, and a medical expert ("ME") testified. Tr. at 1160-1203. On April 1, 2024, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. Tr. at 1135-51. The Appeals council did not assume jurisdiction, making the ALJ's Decision the final decision of the Commissioner. On June 4, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues the ALJ erred in 1) failing to properly evaluate Plaintiff's fibromyalgia under the applicable Social Security Ruling; 2) failing to discuss the supportability and consistency of a treating psychologist's and a treating rheumatologist's opinions; 3) finding Plaintiff could perform

---

[6]     The Complaint does not appear in the administrative transcript.

[7]     The hearing was held via telephone with Plaintiff's consent. Tr. at 1164, 1248, 1267.

various jobs at step five when their descriptions are allegedly inconsistent with Plaintiff's limitations; and 4) relying on "incomplete and incorrect" VE testimony regarding the numbers of jobs available at step five. Plaintiff's Memorandum in Opposition to the Commissioner's Decision (Doc. No. 16; "Pl.'s Mem."), filed September 13, 2024, at 1-2 (emphasis omitted); see id. at 9-14 (issue one), 14-19 (issue two), 19-22 (issue three), 22-25 (issue four). On September 27, 2024, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[8] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that

---

[8]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 1137-51. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 16, 2020, the alleged onset date." Tr. at 1137 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: sensorineural hearing loss bilaterally; bilateral tinnitus; chemical sensitivity allergy; anxiety; depression; post traumatic stress disorder; substance abuse and osteoarthritis." Tr. at 1137 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 1138 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform medium work as defined in 20 CFR [§] 404.1567(c). [Plaintiff] can lift fifty pounds occasionally and twenty-five pounds frequently; carry fifty pounds occasionally and twenty-five pounds frequently; sit for six hours; stand for six hours; walk for six hours and push/ pull as much as she can lift/ carry. [Plaintiff] can work in dust, odors, fumes and pulmonary irritants occasionally and in moderate noise. [Plaintiff] is able to perform simple, routine tasks, SVP 1 or 2. [Plaintiff] is able to interact with coworkers, and the general[] public occasionally. [Plaintiff] could maintain attention and concentration throughout an eight-hour workday with normal work breaks. [Plaintiff] could perform no fast paced or strict quota based work. [Plaintiff] could make simple work-related decisions.

Tr. at 1140 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "Purchasing Clerk." Tr. at 1150 (some emphasis and citation omitted). The ALJ then proceeded to step five. After considering Plaintiff's age ("56 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 1150 (emphasis and citations omitted), such as "Linen Room Supply Worker," "Sweeper Cleaner," and "Box Bender," Tr. at 1151 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from June 16, 2020, through the date of th[e D]ecision." Tr. at 1151 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

# IV.   Discussion

The first two issues are addressed in turn, and the third and fourth issues are addressed together.

## A. Fibromyalgia

Plaintiff contends the ALJ erred in failing to "evaluate the diagnosed medical condition of fibromyalgia under SSR 12-2p guidelines." Pl.'s Mem. at 9. Responding, Defendant contends the ALJ properly found fibromyalgia is not a medically determinable impairment. Def.'s Mem. at 4.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and

> aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Fibromyalgia "is a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869.[9] A "hallmark" of fibromyalgia is "a lack of objective evidence" such as "medical or laboratory signs" with which to make a diagnosis. Moore v. Barnhart, 405 F.3d 1208, 1211

---

[9]    Social Security Rulings "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that [the Administration has] adopted." 20 C.F.R. § 402.35(b)(1).

(11th Cir. 2005). The impairment is "generally diagnosed mostly on an individual's described symptoms." <u>Id.</u> Particularly related to fibromyalgia, SSR 12-2p "provides guidance on how the [Administration] develops evidence that a person has a medically determinable impairment of fibromyalgia and how it evaluates fibromyalgia in disability claims." <u>Sorter v. Soc. Sec. Admin., Comm'r</u>, 773 F. App'x 1070, 1073 (11th Cir. 2019) (citing SSR 12-2p, 2012 WL 3104869).

There are two main ways set forth in SSR 12-2p for evaluating whether fibromyalgia is a medically determinable impairment. The first way requires a claimant to have "[a] history of widespread pain" that "may fluctuate in intensity and may not always be present," as well as "[a]t least 11 positive tender points on physical examination" with various requirements; and finally, "[e]vidence that other disorders that could cause the symptoms or signs were excluded." SSR 12-2p. The second way requires "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." <u>Id.</u>

Once an ALJ determines that a claimant has the medically-determinable impairment of fibromyalgia, the ALJ proceeds with a symptom-evaluation process. Id. "If objective medical evidence does not substantiate the [claimant's] statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Administration is to] consider all of the evidence in the case record, including the [claimant's] daily activities, medications or other treatments the [claimant] uses, or has used, to alleviate symptoms; the nature and frequency of the [claimant's] attempts to obtain medical treatment for symptoms; and statements by other people about the [claimant's] symptoms." Id.

Then, the fibromyalgia impairment is included in the five-step sequential evaluation process as with other impairments. Id. Importantly, when an ALJ is considering the RFC, SSR 12-2p directs that "for a person with [fibromyalgia,] we will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" Id.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the

national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 1142. Regarding the fibromyalgia, the ALJ specifically found it is "not a medically determinable impairment[]." Tr. at 1138. The ALJ recognized that Plaintiff's rheumatologist "did assess [Plaintiff with] fibromyalgia," but noted "there is no documentation of tender points as required by Social Security Ruling 12-2p." Tr. at 1138 (citation omitted); see Tr. at 1413-14 (July 19, 2023 note by Izabela Antic, D.O. assessing fibromyalgia but "[t]ender points absent").

Tender points only speak to the first way in which fibromyalgia can be a medically determinable impairment under SSR 12-2p. Plaintiff argues the ALJ failed to address the second way in which fibromyalgia can be a medically determinable impairment, that is, "[a] history of widespread pain"; "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." Pl.'s Mem. at 10-19; SSR 12-2p.

Although the ALJ did not specifically analyze this second way, the Decision makes clear that she adequately considered the evidence related to the possible fibromyalgia/lupus/positive ANA issues. The ALJ recognized the fibromyalgia diagnosis and positive lupus and ANA tests. See Tr. at 1138, 1142. Of note, the provider who diagnosed fibromyalgia, Dr. Antic, wrote that "fibromyalgia may be a large component" of various symptoms she was experiencing," Tr. at 1413 (emphasis added), suggesting that she was not entirely sure of the diagnosis.

The ALJ summarized Plaintiff's testimony that she was not taking medications related to these issues (despite being prescribed medication for fibromyalgia, see Tr. at 1413-14) because she was "trying to use common sense."

- 13 -

Tr. at 1142 (quoting Plaintiff's testimony at Tr. at 1180) (Plaintiff explaining that because she "had a really bad reaction to steroids," she was attempting to use "diet" and supplements to "ease some of the pain"). In fact, after the one-time July 2023 diagnosis of fibromyalgia, as of the January 2024 hearing, Plaintiff had not followed up with Dr. Antic in any way. Tr. at 1180-81.

The ALJ in the Decision summarized in detail the rheumatology records and documented symptoms. Tr. at 1143. As for Plaintiff's physical abilities, the ALJ noted that the "[r]heumatology records show decreased range of motion in [Plaintiff's] bilateral hips, but full range of motion everywhere else" and Plaintiff "has a normal gait with no sensory deficits." Tr. at 1145. The ALJ explicitly found that she reduced Plaintiff's range of work to the medium level "based on findings of decreased range of motion in her hips" and "her reports of fatigue." Tr. at 1145. In sum, the record is tenuous on whether Plaintiff actually has fibromyalgia. In any event, to the extent she does, the ALJ's Decision reflects consideration of the relevant evidence on the matter and need not be disturbed.

## B. Medical Opinions

Plaintiff asserts the ALJ erred in addressing the opinions of treating psychologist Sanford Chertick, Ph.D. and treating rheumatologist Monica Shah, D.O. Pl.'s Mem. at 14-19. According to Plaintiff, the ALJ inadequately addressed the required consistency and supportability factors when evaluating

the opinions. Id. Responding, Defendant argues the ALJ properly considered Dr. Chertick's and Dr. Shah's opinions. Def.'s Mem. at 7-9.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable medical sources"). Particularly regarding the mental demands of work activities, "medical opinions are about" matters "such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). [10] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ "find[s] that two or more

---

[10]    Plaintiff filed her application after the effective date of sections 404.1520c and 416.920c, so the undersigned applies the revised rules and Regulations.

medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).[11]

Here, Dr. Chertick on July 10, 2023 issued an opinion that Plaintiff has mostly moderate to marked mental limitations. Tr. at 1338-40, 1587-89 (duplicate). The ALJ found it "unpersuasive" because "[t]here are no accompanying medical records from Dr. Chert[i]ck." Tr. at 1148. Moreover, the ALJ observed it was "unclear if Dr. Chert[i]ck reviewed any of [Plaintiff's] records" and he "does not reference a single objective finding from an examination in his narrative." Tr. at 1148. The ALJ then contrasted Dr. Chertick's opinion with that of ME Jeff Andert and the other consultants opining on Plaintiff's mental limitations. Tr. at 1148. These findings reflect adequate consideration of the required factors, are supported by substantial evidence, and need not be disturbed.

As for Dr. Shah, she completed a medical source statement on July 31, 2023 indicating that Plaintiff had a number of physical limitations due to

---

[11]    When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

fibromyalgia and anxiety. Tr. at 1341-46, 1590-96 (duplicate). The ALJ found this opinion "unpersuasive" because "[s]he did not reference a single objective finding to support her conclusion." Tr. at 1148. The ALJ also discussed in detail the rheumatology records and findings contained therein. Tr. at 1148. The ALJ noted that "[w]hile Dr. Shah is listed as a supervising provider, she did not personally examine [Plaintiff]." Tr. at 1148. Finaly, the ALJ contrasted the limitations assessed by Dr. Shah with Plaintiff's own assessment of her physical limitations. Tr. at 1148-49. These findings reflect adequate consideration of the required factors, are supported by substantial evidence, and need not be disturbed.

### C. Step Five Issues

Plaintiff argues the ALJ erred in two ways at step five: first, by relying on jobs that require more functions than Plaintiff's limitations allow, and second, by relying on "incomplete and inaccurate" testimony by the VE regarding the numbers of jobs available in the national economy. Pl.'s Mem. at 19-25. Responding, Defendant contends the ALJ's step five findings are supported by substantial evidence. Def.'s Mem. at 9-11.

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239.  To make this determination, the ALJ may pose a hypothetical question to a VE. See Wilson

v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)); see also Zimmer v. Comm'r of Soc. Sec., 211 F. App'x 819, 820 (11th Cir. 2006) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999) ("An ALJ relies on the testimony of a [VE] to determine what level of skill the claimant achieved in his [or her] past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs.")).

"In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones, 190 F.3d at 1229). If there are "apparent conflicts" between a VE's testimony and the DOT, the ALJ must identify them, "ask the VE about them, and explain how the conflict was resolved in the ALJ's . . . [D]ecision." Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1365 (11th Cir. 2018); see also Viverette v. Comm'r of Soc. Sec., 13 F.4th 1309, 1314 (11th Cir. 2021). The ALJ is required to "articulate specific jobs" that exist in the national economy "that the claimant can perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted). "[W]ork exists in the national economy when it exists either in significant numbers in the region where [the claimant] work[s] or in several

other regions of the country." 20 C.F.R. § 404.1566(a); <u>see also</u> 42 U.S.C. § 1382c(a)(3)(B).

Here, Plaintiff contends there is a conflict between the limitation in the RFC and hypothetical of "no fast paced or strict quota-based work," Tr. at 1140, 1199, and the VE's testimony and ALJ's finding that Plaintiff can perform the job of linen room supply worker, Tr. at 1199-1200, 1151. <u>See</u> Pl.'s Mem. at 19-20. According to Plaintiff, the DOT job description states that the job requires placing bundles onto a conveyor belt or dropping bundles down a chute. <u>Id.</u>; <u>see</u> DOT # 361.687-018. However, the VE specifically testified that she relied on her "training and experience" for matters such as "pace[]" and "frequency or type of contact with others in the workplace." Tr. at 1201. To the extent there may be a conflict between the DOT description and the hypothetical, the VE adequately explained it. The ALJ was permitted to rely on this testimony from an expert on the kinds of jobs an individual can perform. The ALJ did not err.[12]

Finally, Plaintiff challenges the ALJ's reliance on the VE's testimony about the number of jobs available. Pl.'s Mem. at 22-23. According to Plaintiff, the DOT code for the linen room supply worker job "is part of [the Occupational

---

[12]     Plaintiff also argues that the sweeper cleaner and box bender jobs identified by the VE and ALJ are inconsistent with the ALJ's imposition of a moderate noise limitation. Pl.'s Mem. at 21-22. The Court need not reach this issue, however, because the linen room supply worker job has 230,000 jobs available, Tr. at 1151 (ALJ Decision), 1199 (VE testimony); which more than suffices at step five to find Plaintiff can perform work that exists in significant numbers in the national economy. Hereinafter, the undersigned only addresses Plaintiff's step five arguments as they pertain to the linen room supply worker job.

Employment and Wage Statistics (OEWS)] group 51-9198 which has 553 unique DOT codes contained in it and a total employment number for the entire group of 202,860 in the entire nation, of which 42% are part time positions" and "almost 13% of the jobs in this group are exposed to loud noise and 35% of the jobs are generally fast paced work." Pl.'s Mem. at 23.

The Supreme Court has stated that "expert testimony can sometimes surmount" the substantial evidence bar "absent underlying data." Biestek v. Berryhill, 587 U.S. 97, 106 (2019). Although "[i]n some cases, the refusal to disclose data, considered along with other shortcomings, will prevent a court from finding that a 'reasonable mind' could accept the expert's testimony," in others, "the refusal will have no such consequence." Id. at 107. The Eleventh Circuit has criticized a VE's use of numbers from an SOC code that aggregated many separate DOT codes for determining the number of jobs available when a VE "did not take any further steps, or use any other methodology," to determine how many actual jobs were available under the blanket SOC code. Goode v. Comm'r Soc. Sec., 966 F.3d 1277, 1283-84 (11th Cir. 2020).

Here, at the hearing, the VE testified that the sources used to calculate job numbers were "the U.S. Department of Labor as [the] main source data, but specifically that would include the DOT, the SCO, the Occupational Outlook Handbook and the LBS data that comes [from] the Bureau of Labor and Statistics." Tr. at 1201. The VE testified she did not use a program to

consolidate the data, and the numbers given were "DOT specific and they are estimates." Tr. at 1201-02. As far as how the numbers were estimated, she testified, "our approach relies on OES and employment by industry data that comes from the Bureau of Labor and Statistics" and she "leveraged over 25 years of professional experience, knowledge and expertise in this field." Tr. at 1202. She further stated she "identif[ied] jobs that no longer exist that may have changed over the years" but that the data comes "from the U.S. Department of Labor." Tr. at 1202.

This is not a case of a VE's testimony being "clearly and unmistakably wrong on is face" or "internally inconsistent and incomplete." <u>Bacon v. Comm'r</u>, 861 F. App'x 315, 320-21 (citing <u>Goode</u>, 966 F.3d at 1285-86). Although Plaintiff attempts to show that the VE relied on an OEWS group that aggregated many separate DOT codes, similar to <u>Goode</u>, 966 F.3d at 1283-84, the VE's actual testimony does not support that interpretation. Instead, the VE generally testified about her methodology and her reliance on the various data, together with her own experience and expertise. This being a case-specific inquiry, the ALJ did not err in relying on such testimony.

## V.    Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 29, 2025.

_James R. Klindt_
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record